IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

Letha King,

    Plaintiff,

    v.

Alli Jerger, Igor Steinberg, Susan Schneider,
Tiffany Hampton, Dave Tomie, Elizabeth Behnke,
and Bonnie Cyganek, in their individual capacities.

    Defendants.

Case No. 16-CV-375

## COMPLAINT

## I.    NATURE OF ACTION

101.    This is a civil action brought by the Plaintiff in order to obtain redress for the violation of rights secured to her by Title VII of the Civil Rights Act of 1964, as amended, §2000e, et seq., the Equal Protection Clause of the Fourteenth Amendment of the United State Constitution and the Civil Rights Act of 1871 (42 U.S.C. § 1983) which occurred when she was discriminated against on the basis of her race and sex on the job and then, because of her race sex, and in response to her complaints about harassment and discrimination, she was subjected to unwarranted disciplinary actions and a hostile work environment.

## II.    JURISDICTION AND VENUE

### A.  Jurisdiction

201. Jurisdiction over the Plaintiff's claims under Title VII of the Civil Rights Act of 1964 is conferred on this Court by 42 U.S.C. § 2000e-5(f)(3). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**B. Venue**

202. The Western District of Wisconsin is the proper venue for the action because the Plaintiff's claims arose within the geographical boundaries of the Western District of Wisconsin, within the meaning of 28 U.S.C. § 1391(b), and because it is a judicial district in the State in which the unlawful employment practice is alleged to have been committed within the meaning of 42 U.S.C. § 2000e-5(f)(3).

### III.  PARTIES

**A.        PLAINTIFF**

301.  The Plaintiff is an adult female citizen of the United States with the capacity to sue and be sued in this Court.

**B.        DEFENDANT**

303.    The Defendant Alli Jerger is a natural person within the jurisdiction of this Court.

304.    The Defendant Igor Steinberg is a natural person within the jurisdiction of this Court.

305.    The Defendant Susan Schneider is a natural person within the jurisdiction of this Court.

306.    The Defendant Tiffany Hampton is a natural person within the jurisdiction of this Court.

2

307.   The Defendant Dave Tomie is a natural person within the jurisdiction of this Court.

308.   The Defendant Elizabeth Behnke is a natural person within the jurisdiction of this Court.

309.   The Defendant Bonnie Cyganek is a natural person within the jurisdiction of this Court.

## IV.   ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401.   The Wisconsin Department of Justice (hereafter, "DOJ"), is a government agency of the State of Wisconsin.

402.   At all times relevant to these allegations, Ms. King was an employee at DOJ.

403.   At all times relevant to these allegations, the named Defendants were also employees at DOJ.

404.   Ms. King worked as a project manager for the DOJ, working with clients within the DOJ and business partners on various information technology systems and projects.

405.   Ms. King received excellent feedback from supervisors, clients, and business partners, for her work and professionalism.

406.   Plaintiff's 6 month evaluation from Bonnie Cyganek stated, in part: "Letha has had a significant impact on the Bureau (and Department) in six months. Her efforts to formalize our project processes will continue to pay increasing dividends as we raise our maturity level. She has been instrumental in helping to more appropriately define project roles

3

and responsibilities, which will help the business units get the IT solutions they need and the IT staff to be able to focus on their technical tasks."

407.    The evaluation also stated that "Letha communicates the right information to the appropriate people at the appropriate times, thorough and straight-forward. She has helped us formalize some of our communication methods regarding project statuses and other project roles" and that "Letha does an excellent job working with others and as part of a team. As advertised, she is goal oriented and relentlessly strives to complete tasks and projects as assigned."

408.    On or about August of 2013, new managers took over the department in which Ms. King was employed.

409.    In early November of 2013, Ms. King attended a meeting with Defendants Igor Steinberg, Dave Tolmie, and Tiffany Hampton regarding the "ITOG" process.

410.    During this meeting Defendant Steinberg complained that all the work that had been done regarding "ITOG" was wrong. Ms. King felt that Defendant Steinberg was implying she had made mistakes in her work on this project. When Plaintiff asked about this during the meeting, Defendant Steinberg assured her that it was not his intent in any way. Ms. King took him at his word.

411.    On November 5, 2013, Ms. King met with Defendant Steinberg regarding the "ITOG" project, and he informed her that he thought she behaved unprofessionally in the prior meeting, and advised her not to attend or have any involvement in "ITOG" from that point on.

412.    Defendant Steinberg was visibly upset while talking to Ms. King, in that his face was red, there was a tremor to his voice, and his tone was threatening.

413.    On December 19, 2013, the Ms. King received a letter from DOJ Deputy I.T. Director Susan Schneider, directing Plaintiff to report to a pre-disciplinary hearing that same day. The letter indicated that the Ms. King was being accused of violating a DOJ Work Rule, but provided only vague information about the allegations.

414.    During the pre-disciplinary meeting, Ms. King was asked several questions and responded cooperatively to them. She was then told not to speak to Human Resources about the meeting.

415.    Following the pre-disciplinary meeting, it came to Ms. King's attention that Defendants Schneider and Steinberg were apparently interviewing staff with regard to Ms. King, including former employees no longer at DOJ.

416.    In spite of this secret attempt to secure testimony in aid of their harassment against Ms. King, DOJ management staff did not provide further information to the Plaintiff for over 8 months. On August 14, 2014, the Ms. King was informed by Leah Herzberg – Acting HR Director - that the December 19, 2013 allegation was no longer being pursued.

417.    Defendants Cyganek and Schneider informed Ms. King and her Counsel at another point in time that they had "witnesses" to support their December 2013 allegations, but, strangely, would not identify these alleged witnesses and took no further action.

418.    Ms. King believes this aborted disciplinary action in December 2013 was the beginning of a campaign of harassment on the part of Bonnie Cyganek, Susan Schneider, and the other named defendants.

419.    On April 30, 2014, defendant Susan Schneider criticized Ms. King by email for receiving praise from vendors and customers. She indicated positive input should be directed at the entire department, rather than the Plaintiff.

420. On May 9. 2013, Ms. King met with Defendants Schneider and Steinberg regarding a "concept document" for Oracle licenses as part of the "Data Center" project.

421. Defendant Steinberg had requested this document sometime in mid-April of 2013. The majority of the document was created by a different DOJ employee, Mark Martalock, as he was most familiar with Oracle purchase and licensure.

422. At the May 9th meeting, Defendant Steinberg seemed angry. Again, his face was red, his voice trembled, and he spoke in a threatening tone. He told Ms. King that the document was substandard, and that he thought needed to take a basic English class at MATC, and made this a requirement for her performance evaluation.

423. Ms. King has a B.S. in Business Management. The suggestion that she required instruction in "basic English" was intentionally insulting and demeaning.

424. There had been no previous complaints about her writing and communication abilities at DOJ.

425. To her knowledge, her Caucasian co-worker who drafted the majority of the document was not required to attend a basic English course.

426. On June 20, 2014, Ms. King received her performance evaluation from Defendant Schneider, which rated her as an employee who "Needs Improvement." This was a drastic change from previous evaluations, and contrary to the positive feedback from clients and business partners she received as recently as April of 2014.

427. The performance evaluation contained several factual errors, which Ms. King included in a rebuttal letter along with documentation establishing the inaccurate facts upon which Defendant Schneider alleged she was basing her evaluation.

428.    To Ms. King's knowledge, neither Human Resources or Defendant Schneider ever reviewed or responded to her documentation establishing that her evaluation relied on entirely inaccurate information.

429.    On June 28, 2014, Defendant Schneider informed Ms. King that she would now be required to attend one-on-one meetings with Defendant Schneider on a bi-weekly basis. This had never been required for the Ms. King previously.

430.    On or about June 27th and/or June 30th, Ms. King had a 3 minute conversation with Defendant Behnke, who was handling procurement for some of the projects managed by Ms. King.

431.    Ms. King asked for an update on one of their projects, and Defendant Behnke provided a brief synopsis.

432.    Ms. King then asked Defendant Behnke if she could simply copy Ms. King on her emails with the vendor so that she4 would not need to continuously request updates from Defendant Behnke and make it easier for both of them.

433.    Defendant Behnke became defensive in her tone, questioning why she should have to copy Ms. King on her emails to vendors.  She stated she did not have to copy her manager on emails, so she did not think she should have to copy the Ms. King.

434.    Ms. King attempted to explain the project management process to Defendant Behnke so she would understand Ms. King's request, but Defendant Behnke was not interested in her explanation and refused to listen.

435.    Following the meeting, Ms. King created a "RACI diagram" to provide to Procurement and forwarded it to Defendant Schneider.  (The RACI model is a straightforward tool used for identifying roles and responsibilities and avoiding confusion over those roles and

7

responsibilities during a project. RACI stands for "Responsible, Accountable, Consulted, and Informed." It is a standard tool used by project managers in large organizations.)

436.    Defendant Schneider used this document to discuss project management with the Procurement department.

437.    In early July of 2014, Defendant Behnke complained to management about the conversations that Ms. King had with her on June 27th and/or June 30th of 2014 regarding the status of procurement for the projects Letha was managing.

438.    On information and belief, Defendant Behnke alleged that the conversation was "contentious" and made her feel "uncomfortable."

439.    Another DOJ employee, Kevin Jones, was interviewed by Defendant Schneider and alleged that he heard the conversation between Ms. King and Defendant Behnke from his office.

440.    He stated that he felt the conversation violated the DOJ Work Rule, due to Ms. King's "tone of voice" and her use of "short sentences." He admitted that Ms. King's request of Defendant Behnke was appropriate. He did not allege that there was any aggressive or inappropriate language.

441.    An "investigatory interview" was held on July 16, 2014 with Ms. King. She advised Defendants Cyganek and Schneider that she was explaining to Defendant Behnke why she required the information she had requested in order to perform her job. Ms. King noted that she did not raise her voice at Defendant Behnke, or use inappropriate language. As noted above, these facts were not disputed by the alleged witness, Kevin Jones.

442.    On July 31, 2014, Ms. King received a letter from Defendant Schneider, directing her to report to a pre-disciplinary hearing the next day on August 1, 2014. The letter

indicated that the Ms. King was being accused of violating DOJ Work Rule #32 (""Failure to exercise good judgment, or being discourteous, in dealing with fellow employees, supervisors, or the public, or other behaviors unbecoming of a state employee.") during the June 27, 2014 meeting involving Ms. King and Defendant Behnke.

443.    Ms. King asked Defendant Schneider and Defendant Cyganek for a reasonable extension, since Ms. King was given less than 24 hours notice to prepare for the hearing.  This request was denied for no apparent reason.

444.    Defendant Schneider and Defendant Cyganek were asked by Ms. King and her Attorney to identify witnesses other than Elizabeth Behnke who they had interviewed. They refused to provide this information.

445.    On August 4, 2014, Matthew Spencer, another DOJ employee who was present at several different meetings with Ms. King, wrote an email to Bonnie Cyganek advising that he was never asked by DOJ employees about Ms. King's conduct, and that he found her behavior to be entirely professional in the many professional interactions he had and witnessed.

446.    Matthew Spencer was subsequently disciplined by Bonnie Cyganek and Susan Schneider.

447.    The timing of this discipline strongly suggests retaliation against Spencer for his input on Ms. King's professionalism.

448.

449.    On August 5, 2014, in spite of a lack of clear evidence, Ms. King was advised by letter by Defendant Cyganek that she was being officially disciplined.

450.    Ms. King was suspended for one day without pay.

451.    In the Letter of Discipline, Defendant Cyganek accused Ms. King of failing to "demonstrate any acceptance of responsibility for your actions and behaviors."

452.    The letter shows that Defendants Cyganek and some or all of the Defendants retaliated against Ms. King for simply exercising her right to defend herself against false accusations.

453.    Ms. King appealed this disciplinary action by Defendant Cyganek and Defendant Schneider.

454.    This appeal resulted in the alleged infractions resulting from the August 5, 2015 Letter of Discipline being reduced.  Her pay for the day of suspension was also reinstated.

455.    On August 20, 2014, Defendants Cyganek and Schneider again accused Ms. King of violating DOJ Work Rules during a meeting with several participants.

456.    Again, Ms. King was given less than 24 hours to prepare her defense to these allegations.

457.    Defendant Cyganek and Defendant Schneider set the hearing before ever interviewing the independent witnesses from this meeting in which the inappropriate behavior allegedly occurred.

458.    Upon information and belief, Defendant Alli Jerger alleged that Ms. King's behavior was inappropriate.

459.    Upon information and belief, two of the independent witnesses present in the meeting involving Ms. King and Defendant Jerger testified that they witnessed no inappropriate behavior on Ms. King's part during this August meeting.  These individuals, Kevin Jones and Linda Wells, did not support Defendant Jerger's allegations, but were not interviewed until after the disciplinary hearing was already scheduled.

10

460.    On September 5th, Ms. King filed a grievance regarding the treatment she was receiving from the Defendants, and the improper imposition of her suspension. Defendant Steinberg stated that the grievance lacked merit, and dismissed the grievance.

461.    The disciplinary process was improperly and unlawfully used during Ms. King's employment by DOJ as a tool to threaten, harass, discriminate, and retaliate against the Ms. King on the basis of her race.

462.    The individuals investigating the allegations were Caucasian. The individuals making the complaints were Caucasian. Ms. King is African-American.

463.    It should also be noted that Ms. King had reported to Susan Schneider, that on July 15, 2014, Defendant Behnke and another employee had passed her in the lobby on their way to a meeting. When the employee was puzzled as to why Ms. King had not been invited to this meeting (it dealt with one or more of her projects) Defendant Behnke in a raised voice, stated "This meeting has nothing to do with technology, that's why!"

464.    No disciplinary action of any kind was taken by Defendant Schneider against Defendant Behnke, both of whom are Caucasian, in spite of the identical nature of this unprofessional outburst to the one that was falsely alleged and pursued against Ms. King.

465.    The limited documents provided to Ms. King by the DOJ indicate that the testimony of Caucasian defendants in all matters was immediately accepted as accurate, while Ms. King's testimony was dismissed outright.

466.    Ms. King complained about harassment and the creation of a hostile work environment by the Defendants. These complaints coincide with some or all of the disciplinary actions and allegations by the Defendants.

11

467. Ms. King believes the Defendants actions constituted both discrimination and retaliation by the Defendants.

468. As a result of the Defendant's actions, Ms. King was unable to continue her work in the midst of this ongoing workplace harassment and retaliation, and was thereby constructively discharged, and had to leave the DOJ position for a different employer.

469. Ms. King's new employer has made no complaints of any kind against Ms. King.

470. It should be noted that in the in the recent past, at least 16 employees of color have resigned or been terminated by the DOJ, implying that this hostile work environment was not limited solely to the Ms. King.

## V.    BASIS OF LIABILITY

### 1.    Title VII.

501. The Defendant, DOJ, violated Ms. King's right to be free from discrimination in the terms and conditions of employment on the basis of race and sex secured to her by Title VII of the Civil Rights Act of 1964 when she was discriminated against on the basis of her race at her job, she was subjected to unwarranted and harassing disciplinary actions, and was constructively discharged due to the Defendants' creation and continuation of a hostile work environment.

502. The Defendant, DOJ, violated Ms. King's right to be free from retaliation for complaining about discrimination in the terms and conditions of employment on the basis of race secured to her by Title VII of the Civil Rights Act of 1964 when, in response to her complaints, she was subjected to unwarranted and harassing disciplinary actions, and was

constructively discharged due to the Defendants' creation and continuation of a hostile work environment.

### 2.    The Equal Protection Clause of the Fourteenth Amendment.

503.    The individual Defendants violated Ms. King's right to free from discrimination in the terms and conditions of employment on the basis of race secured to her the Equal Protection Clause of the Fourteenth Amendment to the United State Constitution when she was discriminated against on the basis of her race at her job, she was subjected to unwarranted and harassing disciplinary actions, and was constructively discharged due to the Defendants' creation and continuation of a hostile work environment.

504.    The individual Defendants violated Ms. King's right to be free from retaliation for protesting discrimination in the terms and conditions of employment on the basis of race secured to her the Equal Protection Clause of the Fourteenth Amendment to the United State Constitution when, in response to her complaints, she was subjected to unwarranted and harassing disciplinary actions, and was constructively discharged due to the Defendants' creation and continuation of a hostile work environment.

### 3.    Liability under Wis. Stats. § 895.46

505.    Defendants because they were at all material times acting within the scope of their employment with the Wisconsin Department of Justice within the meaning of Wis. Stats. § 895.46.  The Plaintiff does not allege that the wrongful acts alleged herein were carried out pursuant to a custom or policy of the DOJ.

### VI.    DAMAGES

13

601.    Ms. King sustained lost wages and benefits, mental and emotional distress, damage to her reputation, and loss of future earning capacity as a result of the Defendant's unlawful conduct, for which she seeks an award of compensatory damages.

## VII.    CONDITIONS PRECEDENT

702.    All conditions precedent to this action within the meaning of Rule 9(c) of the Federal Rules of Civil Procedure have been performed or otherwise occurred.

## VIII.    REQUEST FOR JURY TRIAL

801.    The Plaintiff request a trial by jury of all claims triable to a jury.

## IX.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays the Court to grant a judgment against the Defendant awarding the full amount of her damages together with interest, costs, and attorney's fees and such other relief as the Court deems just.

Respectfully submitted, this 9th day of June, 2016.

Stan Davis, Counsel for Plaintiff

s/ Stan Davis
THE DAVIS GROUP, LLC
State Bar No.: 1032336
4230 East Towne Blvd., #305
Madison, WI  53704
sdavis@davisgroupwi.com
608.469.7208

Jason F. Hahn, Co-Counsel for Plaintiffs

s/ Jason F. Hahn
HAHN LAW OFFICE, LLC
State Bar No.: 1041777
2810 Crossroads Drive, Suite 4000
Madison, WI  53718
jhahn@jfhahnlawoffice.com
608.347.7552

14